220 So.2d 6 (1969)
In re Proposed Addition to the Additional RULES GOVERNING the CONDUCT OF ATTORNEYS IN FLORIDA.
No. 38099.
Supreme Court of Florida.
March 12, 1969.
Julian D. Clarkson, Fort Myers, Henry M. Kittleson, Bartow, and Thomas C. MacDonald, Jr., Tampa, for The Florida Bar, petitioner.
Raymond Ehrlich, Jacksonville, for Liberty Mutual Ins. Co.
Neal P. Rutledge, Miama, for Richard E. Hardwick.
*7 Keen, O'Kelley & Spitz, A. Frank O'Kelley, Chas. H. Spitz, and Helen C. Ellis, Tallahassee, for American Insurance Association, American Mutual Ins. Alliance and National Association of Independent Insurers, as amici curiae.
THORNAL, Justice.
The Florida Bar has petitioned the Court to approve an addition to the Rules Governing the Conduct of Attorneys in Florida to be designated Additional Rule 34, 32 F.S.A., as follows:
"An attorney employed in a master-servant or employer-employee relationship by a lay agency, such as a bank, savings and loan association, trust company or insurer, shall not render in the scope of his employment legal services on behalf of or in the name of customers, patrons or insureds of the lay agency unless it shall clearly appear that the sole financial interest and risk involved is that of the lay agency."
The obvious objective of the proposal is to restrict representation of individuals by so-called "house counsel." The announced motive of the Bar, which we accept, is to protect the public against the dangers of potentially duplicitous representation, albeit by those who do not intend a breach of the rules of ethics. As an illustration but certainly not comprehending the entire problem, the Bar advises that a primary source of concern is the practice of certain major insurance companies to maintain full time employed counsel who also represent policyholders. The problem occurs when a conflict develops between insurer and insured, such as when a claim exceeds policy coverage or when a compromise settlement is in the making. In such situations the Bar insists that the best interests of an insured require the service of independent counsel. They claim that the compulsive economic pressure of retaining one's full time means of livelihood precludes the possibility that a lawyer under such circumstances can give unadulterated devotion to divergent interests.
The rule, as suggested, seems to emphasize the employer-employee relationship as the element which would distinguish the lawyer's responsibility to one of two clients whose interests might develop conflicts. It appears to us that the ethical problem might well arise regardless of the nature of the employment relationship between the lay agency and the lawyer. That is to say, in resolving an ethical conflict between a lay agency and one of its customers it would not be material whether the lawyer is employed as the attorney for the lay agency on a full-time master-servant basis, or merely on an isolated attorney-client basis. The ultimate problem is the same. There may come a time when the lawyer must decide which of two "masters" he will continue to serve because the presence of a conflict makes it ethically impossible to serve both. Consequently, the proposed rule does not completely solve the problem which the Bar seeks to remedy. It merely discriminates against a class with no reasonable basis for the distinction.
We understand, of course, that there is a difference between lay agency and lawyer inter se when the employment is full time and salaried as contrasted to a particular case, special fee arrangement. The point we make merely is that when a conflict does arise the ethical decision which the lawyer faces is the same in both relationships  if he is employed to represent two clients. He simply cannot serve two masters in either situation.
When a lawyer undertakes the representation of a particular client he should be free to exercise completely unhampered professional judgment solely for that client. He should not be swayed directly or indirectly by his own interest or those of other clients or third parties. He is ethically obligated to avoid a duality of representations whenever a conflict of interests between clients appears. To this end when a lawyer is being compensated by a third *8 party source or by one of two clients in a duality of representations the hazard of an imbalance of loyalties becomes readily apparent. In such a situation the lawyer should exercise abundant caution to avoid any dislocation or inequality in his professional loyalties. We do not hold that a third party may not ethically pay the cost of legal services to be rendered by a lawyer to a particular client. We do hold that in such a situation the lawyer owes undivided loyalty to the client whom he purports to serve, not to the third party source of his compensation. When he finds himself serving the latter instead of the former, he becomes duty-bound to make a forthright explanation to his client and seek release from his professional obligation in the premises. See proposed Code of Professional Responsibility, Canon 6, January 15, 1969, draft, prepared by the American Bar Association Special Committee on Evaluation of Ethical Standards. If the representation initially contemplates professional services to two clients with a mutuality of interests, the attorney carries the burden of clearly and distinctly disassociating himself from his allegiance to one whenever the interests of the two cease to be mutual and come into collision.
We are not here confronted by the typical "group legal services" problem. This is not a situation where an organization undertakes to furnish legal services to its members as one of the benefits of membership. Here, for a consideration it is contemplated that a business entity contracts to provide certain protection, including legal services, to its customers. One of the opponents of the proposed rule, Liberty Mutual Insurance Company, by its brief insists that when an insurance company "has both the financial stake in the outcome of the litigation and the burden of carrying the costs of the defense, it is defending its own interests and is entitled to defend by its own employee, so long as he is a member of the Bar and an officer of the Court." Liberty Mutual further asserts that "the legal responsibility placed on the insurance company give[s] pointed verification to the fact that the interest involved in defense of liability suits is primarily and ultimately the interest of the insurance company." The same brief then insists that, "It is the insurance company's interest, as an entity, that the lawyer represents, whether house counsel or fee counsel." The brief of amici curiae which advises that these three associations "represent 659 insurance companies who write the bulk of the fire, casualty and liability policies" in Florida "subscribe to and adopt the brief filed by" Liberty Mutual.
We have no problem in concurring in these contentions by the insurance carriers and agree, also, that this is so regardless of the nature of the employment of insurance counsel. There is, of course, in addition the obligation of the insurance contract which delineates the rights and duties of insurer and insured between themselves. When their interests collide, the lawyer, regardless of the quantum of his employment, must make the ethical decision.
The insurance carriers also insist that Canon 6, Rule B, Ethics Governing Attorneys, 32 F.S.A., is adequate to regulate the subject problem to the extent necessary to protect the public. It may be. We are not here called upon to resolve that issue. In this connection, however, we do suggest reference to the proposed Code of Professional Responsibility, supra, with particular attention to the summary of Canon 6, Ethical Considerations §§ 19-22, and Disciplinary Rule 6-108(A) and (B).
It is altogether likely that this entire matter will receive further study by officials of the Bar as well as the business interests involved. In that process we must bear in mind that a primary function of the Bar is to protect the public against duplicity and the profession against ethical deviations. The moral considerations should not be exploited so as to develop a double standard of ethics for salaried *9 and non-salaried lawyers. They should all be held to the highest degree of loyalty and devotion to the causes of the clients whom they agree to serve. Anything short of that is a breach of trust.
We have expressed our views at some length in the hope that they will be of service in any future consideration of the problem. Because of what we have said the petition for approval of the proposed additional rule must be denied.
It is so ordered.
ERVIN, C.J., and ROBERTS, DREW, ADKINS, BOYD and CALDWELL (retired), JJ., concur.