230 So.2d 495 (1970)
BETA ETA HOUSE CORPORATION, Inc. of Tallahassee, Florida, a Nonprofit Florida Corporation, and General Accident Fire and Life Insurance Company, Limited, a Foreign Corporation, Petitioners,
v.
William E. GREGORY, a Minor, by His Mother and Next Friend, Lucy A. Gregory, and Lucy A. Gregory, Individually, Respondents.
No. M-241.
District Court of Appeal of Florida. First District.
January 20, 1970.
*496 H.O. Pemberton, E. Harper Field, and Helen C. Ellis, of Keen, O'Kelley & Spitz, Tallahassee, for petitioners.
Henderson, Buchanan & Sapp, Panama City, and Podhurst & Orseck, Miami, for respondents.
WIGGINTON, Judge.
Petitioners seek review by certiorari of an order rendered in a common law action by which the trial court denied petitioner General Accident Fire and Life Insurance Company's motion to dismiss the complaint as to it because of its failure to state a cause of action.
Interlocutory appeals from orders rendered in common law actions are not permitted except as to certain types of orders specified by the rule.[1] The order which is the subject of attack in the case sub judice is not of the type of which an interlocutory appeal is permitted. Nevertheless, under the circumstances hereinafter shown it is our view that the order, if erroneous, constitutes a departure from the essential requirements of law and will cause material injury to the petitioners throughout the remainder of the proceedings for which there will be no adequate remedy by appeal after judgment. For this reason we will in the exercise of our discretion entertain jurisdiction and proceed to consider and pass upon the merits of the case.[2]
Respondent has filed a complaint at law alleging that he suffered personal injuries when he tripped and fell on a concrete sidewalk while lawfully on the premises owned by petitioner, Beta Eta House Corporation, Inc.; that his damages resulted from the negligence of the House Corporation by its failure to maintain the premises in a reasonably safe condition as a proximate cause of which he was injured. Money judgment is sought against petitioner House Corporation for the damages suffered by respondent. Joined as an additional defendant is petitioner, General Accident Fire and Life Insurance Company, Limited. The complaint alleges that the company issued its policy of insurance to the House Corporation by which the latter was insured against loss. Although the allegations of the complaint do not specifically so state, parties by their briefs appear to concede without dispute that the insurance policy in question includes a premises liability insurance clause by which the company agrees to pay on behalf of the House Corporation all sums for which the latter may become legally obligated to pay as damages because of the negligent maintenance or operation of the premises. Our consideration will be premised upon this concession. General Accident filed its motion to dismiss the complaint on the ground that it failed to state a cause of action against it. From the order denying this motion both petitioners have filed their petition for certiorari contending the ruling to be an erroneous departure from the essential requirements of law.
The sole question presented for our decision is whether a premises liability insurer may be joined as an additional defendant in an action brought against its insured for damages proximately caused by the latter's negligence. A similar question was presented to and decided by this court in *497 the case of Bussey v. Shingleton.[3] The only material distinction between the Bussey case and the one sub judice is that in the former the insurance contract there construed was an automobile liability insurance policy, whereas the contract in this case is a premises liability insurance policy providing insurance against loss suffered by the insured as a result of the negligent maintenance or operation of its premises.
In Bussey we held that because of several factors not theretofore considered by the courts of Florida in passing upon the question involved, an automobile liability insurance carrier was a real party in interest in every suit brought by an injured third party against an insured policyholder within the purview and meaning of Rule 1.210(a), Florida Rules of Civil Procedure, 30 F.S.A., and could therefore be properly joined as an additional party defendant in any such action. In our consideration of the case we took into account the provisions of the standard automobile liability insurance policy which grants to the insurer the right to control all claims arising under the policy, as well as all litigation, both trial and appellate, ensuing therefrom. We furthermore took into account the results of a former proceeding pursued in the Supreme Court of this state in which the automobile liability insurance carriers doing business in Florida took the firm and unequivocal position that they were real parties in interest in all litigation brought against their insureds under the terms and provisions of standard automobile liability insurance policies issued and sold by them. Secondarily, we held that automobile liability insurance policies, by their very nature, constituted quasi-third party beneficiary contracts intended for the protection of third persons who suffered damage as a result of the negligence of those insured by such policies. We buttressed this conclusion by reference to the Financial Responsibility Law of this state,[4] which requires the operators of motor vehicles, having had one prior accident resulting in damage to another, to procure and maintain liability insurance for the benefit of those members of the public who might subsequently suffer damages as a result of the negligent operation of the insured's vehicle.
Our decision was reviewed by the Supreme Court in Shingleton v. Bussey[5] and approved in every respect. By its decision, however, the Supreme Court appears to have placed the rule permitting joinder of liability insurance carriers in suits brought against their insureds on a much broader basis than this court did by its decision. In holding that a liability insurance policy is as a matter of law a contract for the benefit of third parties, the court conceded that its reasoning was supported by the public policy considerations flowing from the State's Financial Responsibility Law. The court's decision proceeded to hold, however, that its conclusion was not dependent upon the public policy considerations arising from the State's Financial Responsibility Law, but was based squarely upon the proposition that liability insurance was for the benefit of third parties to an equal extent as it was to the insured in whose favor the policy issued. In its decision the court said:
"It cannot be disputed that securance of liability insurance coverage protection for the operation of a motor vehicle, regardless of whether the policy is secured to meet the requirements of Ch. 324, F.S., is an act undertaken by the insured with the intent of providing a ready means of discharging his obligations that may accrue to a member or members of the public as a result of his negligent operation of a motor vehicle on the public streets and highways of this state.
"Viewed in this light, we think there exists sufficient reason to raise by operation of law the intent to benefit injured *498 third parties and thus to render motor vehicle liability insurance amenable to the third party beneficiary doctrine.
* * * * * *
"It seems reasonable to view the cause of action against an insurer in favor of an injured third party as vesting in or accruing to the injured party at the same time he becomes entitled to sue the insured, assuming, of course, due notice of the injured party's claim has been given insurer and it has had opportunity to duly investigate the same."
In commenting upon the public policy considerations which militate against permitting a liability insurance carrier to avoid being joined as a defendant in a suit against its insured while at the same time controlling the litigation in its own self-interest, the court said:
"In any case, it seems anomalous to public policy to procedurally sanction and condone a situation where the ultimate beneficiary of policy proceeds is deprived by a provision in the policy of an open, speedy and realistic opportunity to pursue by due process his right of an adequate remedy at law jointly against the insured and insurer. Especially is the result obtained by such policy restriction incongruous where the insurer participates in the controversy, not as a joint defendant in the proceedings brought by the injured plaintiff against the insured, but, rather, as the undisclosed guardian of the interests and rights of the insured  and of course, of the insurer's interest also. See In re Rules Governing Conduct of Attorneys in Florida, (Fla. 1969), 220 So.2d 6. In such cases, it is hard to imagine all of the many difficulties which could operate to impede the injured third party plaintiff from ferreting out and having adjudicated his rights of adequate remedy against the insured and the insurer when he is precluded from initially and directly having the trial court consider all facets of the joint and several liabilities of the defendants in one action, not only as to plaintiff's claim against the insured, but as to any defenses of insurer against insured which might operate to destroy his claim."
By its decision the Supreme Court held that where the provisions of a liability insurance policy which seek to immunize the insurer from being joined as a party defendant in a suit against its insured collide with principles of due process, equal protection and the right of the injured third party to a full and adequate remedy of law, the restrictive policy provisions must yield. In so holding the court said:
"The provisions prohibiting joinder and direct action in the case sub judice do not merely attempt to defer the liability of the insurer, but in addition seek to defer, subject to the same condition, the right of an injured third party beneficiary to maintain a cause of action against the insurer. In the modern world which is fraught with public safety hazards, it is unrealistic that mass liability insurance coverage designed to afford protective benefits for the general public should contain such condition precedent as a barrier to the right of identified members of the protected class to pursue a speedy, realistic and adequate recovery action. This hardly comports with Section 4, Declaration of Rights, State Constitution, F.S.A., that the courts shall be open so that persons injured shall have remedy by due course of law without denial or delay."
In declaring that compelling principles of public policy are incompatible with the right of a liability insurance carrier to be immune from suit brought against its insured, the Supreme Court said:
"The insured and the insurer cannot constitutionally contract away or postpone the speedy and adequate remedy the law affords a third party, nor impose unusual limitations upon the latter's right to jointly sue adverse parties. Balanced, therefore, against the public policy of this state favoring the elimination of *499 multiplicity of suits and unreasonable impediments to the remedial process of adjudication of adversary rights conferred by the operation of substantive principles of law, we think the `no joinder' restriction in the subject policy goes much too far and therefore should be construed as securing for the insurer only the right to assert the nonliability and not the nonjoinder of the insured with the insurer as a condition precedent to the liability of the insurer."
With respect to this court's holding that liability insurance carriers were real parties in interest under policies issued to their insureds, the Supreme Court in its opinion said:
"It can hardly be denied that one of the fundamental goals of modern procedural jurisprudence is to secure a method of providing an efficient and expeditious adjudication of the rights of persons possessing adverse interests in a controversy. The liberal joinder provisions of Rule 1.210(a), Florida Rules of Civil Procedure, 30 F.S.A., acknowledges this policy by providing: `Any person may be made a defendant who has or claims an interest adverse to the plaintiff.' This requirement of the procedural rules raises the presumption that unless the Legislature in the exercise of its police power regulation of insurance, affirmatively gives insurers the substantive right to insert `no joinder' clauses in liability policies there is no basis in law for insurers to assume they have such contractual right as a special privilege not granted other citizens to contract immunity with their insureds from being sued as joint defendants by strangers."
From the foregoing it seems apparent to us that although the type of insurance contract involved in the Bussey-Shingleton case was one of automobile liability insurance, the principles enunciated by the Supreme Court in its reviewing decision are applicable to all types of liability insurance. Such principles are premised upon the theory that liability insurance, by its very nature, is intended to benefit and protect injured third party members of the public, and that because of the control exercised by the insurer over claims made against its insured for damages coming within the coverage of the policy, as well as all litigation resulting therefrom, the liability insurer is a real party in interest subject to joinder as a defendant in any suit brought against its insured. The public policy considerations unrelated to those inherent in the Financial Responsibility Law which persuaded the Supreme Court to the views it expressed in its decision apply with equal force to all types of liability insurance policies which protect and benefit injured third parties, and are not restricted exclusively to a consideration of automobile liability insurance contracts.
For the reasons expressed and the principles pronounced by both this court and the Supreme Court in their respective considerations of the Bussey-Shingleton case, we are of the view, and so hold, that a liability insurance carrier is a proper party defendant in any suit for damages brought against its insured for damages proximately caused by the latter's negligence within the coverage provisions of the policy.
We consider it proper and necessary to point out that the decisions of this court in Bussey v. Shingleton, supra, and of the Supreme Court in Shingleton v. Bussey, supra, were not intended to nor do they have the effect of changing the substantive law of this state. These decisions have merely created a procedural innovation which permits a direct action against a liability insurance carrier as a codefendant in a suit brought against its insured where no such action previously existed. Such innovation does not diminish in any manner the obligatory judicial concern to preserve the purity of the jury verdict and to prevent irrelevant factors from being injected into the trial of a case which may in any manner prejudice the jury in arriving at a fair and *500 impartial verdict on the issues presented for decision. It is because of such concern that the substantive law of our state has consistently prohibited the injection into the trial of a negligence action any reference to insurance or insurance coverage held by the defendant tort-feasor.[6]
Many studies and surveys of the subject have led to opposite conclusions with the result that there remains a sharp conflict of responsible opinion as to whether the disclosure of the existence of insurance held by a defendant in a negligence action does or does not have the effect of unfairly influencing the jury in arriving at its verdict. Until it can be established with reasonable certainty that the disclosure of insurance protection held by a defendant does not in any manner influence a jury in arriving at its verdict, the courts should employ those procedural devices available to them to insure that each of the parties is accorded a fair trial free from prejudice or undue influence. One such device which is available and, absent extraordinary circumstances, should be utilized is the one authorizing separate trials as provided by Rule 1.270(b), Rules of Civil Procedure.[7]
Pursuant to the provisions of this rule the trial court should on the motion of a party order that the issues relating to the cause of action sued upon be first tried under circumstances which exclude any reference to insurance, insurance coverage or joinder in the suit of the insurer as a codefendant. After this trial has been concluded and a verdict rendered for the plaintiff, a second trial confined solely to the issue of insurance coverage should be held if such an issue has been raised. If no such issue is present, judgment against the insurer within policy limits would follow the verdict rendered in the first trial on the merits.
Such procedure would preserve for the plaintiff those desirable benefits flowing from the privilege of being able to bring a direct action against the insurer which are discussed by the Supreme Court in Shingleton v. Bussey, supra. It has been alluded to both in this and the Supreme Court's decisions in the Shingleton-Bussey case that juries have reached such a stage of maturity and sophistication where disclosure during trial of insurance protection held by a defendant no longer has a prejudicial effect upon their verdicts. If such assumption implies a concern for preserving the impartiality of the trial by proponents of the direct action theory, then the exclusion of such disclosure from the trial cannot in good faith be considered objectionable. By such exclusion the possibility of prejudice will be eliminated consistent with the long-standing principle of substantive law recognized in this state, and the defendant's right to an impartial trial on the issue of negligence will be preserved.
In order that the Bench and Bar may have the benefit of an authoritative decision of statewide application, it shall be our purpose to certify this decision to the Supreme Court as one involving a question of great public interest in order that the purpose and effect of the decisions rendered in the Bussey-Shingleton case may be evaluated and a pronouncement made as to whether (a) the principles announced therein are applicable not only to automobile liability insurance but also to other forms of liability insurance; and, (b) whether the suggested procedure for preserving the substantive law of Florida by ordering separate trials pursuant to Rule *501 1.270(b), Rules of Civil Procedure, in those cases where the liability insurance carrier is joined as a defendant in a tort action against its insured should be followed by the trial courts of this state.
The order appealed is approved, and petition for writ of certiorari denied.
CARROLL, DONALD K., Acting C.J., and SPECTOR, J., concur.
NOTES
[1] Rule 4.2, F.A.R., 32 F.S.A.
[2] Pullman Company v. Fleishel, (Fla.App. 1958) 101 So.2d 188.
[3] Bussey v. Shingleton, (Fla.App. 1968) 211 So.2d 593.
[4] F.S. Chap. 324, F.S.A.
[5] Shingleton v. Bussey, (Fla. 1969) 223 So.2d 713, 716-19.
[6] Pensacola Transit Co., Inc. v. Denton, (Fla.App. 1960) 119 So.2d 296; Carls Markets, Inc. v. Meyer, (Fla. 1953) 69 So.2d 789; Ryan v. Noble, 95 Fla. 830, 116 So. 766.
[7] "Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim or third party claim or of any separate issue or of any number of claims, cross-claims, counterclaims, third party claims or issues."