## GORMAN *v.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY

[No. 155, October Term, 1955.]

2

*Decided April 11, 1956.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Rufus King*, with whom were *Downey Rice* and *Rice & King* on the brief, for the appellant.

*William H. Clarke* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from the action of the trial court in sustaining a demurrer to a declaration without leave to amend and entering a judgment for costs on September 27, 1955. The declaration alleged that the plaintiff's wife, while in the Suburban Hospital in Montgomery County undergoing surgery, was injured through the negligence of a nurse; that on August 31, 1954, plaintiff brought an action against the Hospital alleging these facts and demanding damages in the sum of $150,000.00; that on September 10, 1954, the Hospital through its attorney filed general issue pleas and a special plea that "the defendant is an eleemosynary institution and not amenable to suit", which the plaintiff believes to be true.

It was further alleged that the Hospital had in force at the time of the injury a policy of insurance in the sum of $100,-000.00 issued by the defendant to cover the liability of the Hospital for negligence, "which policy was required to contain, in accordance with the laws of the State of Maryland, and more particularly Chapter 900 of the Acts of 1947 (Maryland Code of 1951, Article 48-A, Section 82) a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that its insured is immune from liability on the ground that it is a charitable institution." The plaintiff "demands judgment in the sum of

One Hundred Thousand Dollars". This declaration was filed on December 9, 1954, and the demurrer was filed on January 17, 1955.

In its brief filed in this Court the appellee asserts that by leave of court the Hospital withdrew its pleas to the original declaration, and filed a plea that it did not commit the wrongs alleged on March 4, 1955. The appellee contends that the case is moot. The appellant contends in a reply brief that since the demurrer admits the truth of the allegations of the declaration, the withdrawal of the plea in the other case is not properly before this Court, and in any event is outside the record. We may assume, without deciding, that if the new matter brought in, particularly where its truth is not denied, went to the heart of the case and concluded the matter sought to be adjudicated, it might be considered on appeal, although outside the record. Actions that render a case moot usually occur after an appeal is entered, and must be shown *dehors* the record. Cf. *Lake Falls Association v. Board of Zoning Appeals,* 209 Md. 561, and cases there cited. We think, however, that the withdrawal of the plea in the other case did not render this case moot. The cause of action against the insurer, if it lies at all, is not dependent upon the state of the pleadings in the other case.

The gravamen of the action here is that the insurer has rendered itself directly liable to the injured party on account of a negligent wrong committed by its assured. The policy on which such liability is predicated is not before us, nor is it alleged to contain any provisions to that effect but only that the policy was required to contain the estoppel provision prescribed in Code (1951), Art. 48A, sec. 82. This section reads: "Each policy issued to cover the liability of any charitable institution for negligence or any other tort shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such institution is immune from liability on the ground that it is a charitable institution."

If we assume for present purposes that the policy did contain such a clause, the statutory language does not purport to create any new cause of action. The type of policy is de-

scribed as one to cover the liability of the charitable institution for negligence or any other tort. Sec. 80 of the same Article provides: "No liability insurance policy issued in this State shall contain any requirement for the payment of liability or loss under the policy, by the assured, but all such policies shall provide in substance that the bankruptcy or insolvency of the assured shall not release the insurer from liability; that if an execution upon any final judgment against the assured is returned unsatisfied, in whole or in part, in an action brought by the injured or by another person claiming by, through, or under the injured, then an action may be maintained by the injured, or by such other person against the company under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy, and every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding."

So far as this section is concerned, liability policies are only required to afford a direct action by an injured party against an insurer after a judgment has been obtained against the assured, which is unsatisfied after execution. In *Tullgren v. Jasper,* 27 F. Supp. 413, 418 (D. C. Md.), one of several defendants in a tort action filed a third-party complaint seeking to bring in the insurer of a co-defendant. The complaint was dismissed. The policy contained the usual non-action clause. Referring to section 80, Judge Chesnut said: "While it is true the Maryland Casualty Company [insurer] may hereafter become liable to the plaintiff, it is not apparent that the plaintiff could itself have properly joined the Maryland Casualty Company as an original defendant because its liability, if any, to the plaintiff arises only after judgment obtained by the plaintiff against the defendant which remains unsatisfied."

The chief difference between a liability and an indemnity policy is that under the former a cause of action arises in advance of a discharge of liability by payment of a judgment by the assured. *Appleman, Insurance Law,* § 4261; *Poe v. Phila. Casualty Co.,* 118 Md. 347; *U. S. Fid. Co. v. Williams,* 148 Md. 289; *Indemnity Co. v. Fid. & Dep. Co.,* 159 Md. 73; *Assurance Corporation v. Perkins,* 169 Md. 269. In

some states it is expressly provided by statute that direct action will not lie against an insurer under a liability policy, except after judgment against the assured: *Appleman, Insurance Law,* Sec. 4852. In Louisiana the statute permits a direct action in certain cases, as where the assured is immune from suit. See *Lusk v. United States Fidelity & G. Co.,* 199 So. 666 (La.); *Lumbermen's Casualty Co. v. Elbert,* 348 U. S. 48; and *Watson v. Employers Liability Corp.,* 348 U. S. 66. In the absence of statute, it is generally held that direct action will not lie against the insurer, in advance of judgment against the insured. *Appleman, Insurance Law,* §§ 4861, 4862; *Arnold v. Walton,* 54 S. E. 2d 424 (Ga.).

It is contended, however, that unless the action lies the legislative purpose in enacting section 82 will be nullified. It is conceded that under the established Maryland law an action will not lie against a charitable institution for negligence. We adhered to this view in *Howard v. South Balto. Gen. Hosp.,* 191 Md. 617, despite a contention that the earlier cases were wrongly decided and out of line with the modern trend. In this connection, see *Prosser, Torts* (2d ed.), p. 784, *et seq.; Wendt v. Servite Fathers,* 76 N. E. 2d 342 (Ill. App.); *Pierce v. Yakima Valley Memorial Hospital Ass'n,* 260 P. 2d 765 (Wash.); Note, 25 A. L. R. 2d 29. We referred to the fact that the Legislature in 1947 had declined to enact a bill that would have estopped any charitable institution from pleading as a defense to tort claims the fact that it was such an institution, with a limitation of liability to the amount of liability insurance carried. Instead it enacted section 82 in its present form. In *Thomas v. Prince George's County,* 200 Md. 554, 560, we suggested certain questions that might arise under the Act of 1947 but did not undertake to supply the answers. In neither of these cases was the fact of insurance brought out in the pleadings or otherwise in the trial court. In the case last cited, however, we remanded the case to permit amendment so as "to bring into the case the question of insurance and the effect, if any, of the Act of 1947."

If section 82 were construed strictly as applicable only to a suit by the insured against the insurer, it would indeed

render the statute nugatory, for if the charitable corporation is immune from suit there could never be a judgment against the insured where the defense is raised. But it does not follow that a direct action will lie by the tort claimant against the insurer. We think the Legislature had in mind the fact that the insurer usually conducts the defense of the action by the tort claimant against the insured, and to the extent of the collectible insurance, and to that extent only, the insured is estopped from raising the defense of immunity. Cf. *Taylor v. Knox County Board of Education,* 167 S. W. 2d 700 (Ky.), and *Rogers v. Butler,* 92 S. W. 2d 414 (Tenn.). See also Note, 145 A. L. R. 1336. Recovery was allowed in Illinois, even in the absence of statute, where a policy contained a covenant not to plead immunity unless requested by the insured, and this fact was brought out in the pleadings. *Wendt v. Servite Fathers, supra.* Cf. *Moore v. Moyle,* 92 N. E. 2d 81 (Ill.). Many courts have held that the mere procurement of insurance does not bar the defense. *Meade v. St. Francis Hospital of Charleston,* 74 S. E. 2d 405 (W. Va.); *Scott, Trusts,* § 402. In the instant case we have to construe the statutory language, not merely the language of the policy. Cf. *Brooks v. Clark County,* 180 S. W. 2d 300 (Ky.).

We find it unnecessary to discuss any questions of appropriate procedure in the other pending action. It is sufficient that we now hold that the statute does not contemplate a direct action against the insurer by a tort claimant in advance of some determination of liability on the part of the insured in the pending action.

*Judgment affirmed, with costs.*